UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CASSANDRA WASHINGTON | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 05162 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| HUGHES SOCOL PIERS RESNICK & DYM, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Cassandra Washington is a former Chicago Public Schools (CPS) principal who alleges that she was forced out because of her race, gender, and age, and in retaliation for speaking publicly about school funding inequity. But this case is not against CPS. Instead, Washington alleges that a law firm, Hughes Socol Piers Resnick & Dym, Ltd. (call it "Hughes Socol"), whom she hired to represent her in termination proceedings against the CPS Board (going forward: "the Board"), worked with the Board to force her out of her position in violation of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq*. R. 1, Compl. ¶¶ 35-48.[1] She also alleges that Hughes Socol committed legal malpractice in handling her case. *Id*. ¶¶ 49-54. Hughes Socol now moves to dismiss the complaint, arguing that it fails to state a claim under ERISA, primarily because Hughes Socol was not Washington's employer, R. 11, Mot. Dismiss at 2, and that absent an operative federal claim, the Court does

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331. Citations to the docket are noted by "R." followed by the docket number and, where necessary, a page or paragraph citation.

not have jurisdiction over Washington's state law legal malpractice claim, *id*. at 2-3. For the reasons stated below, Hughes Socol's motion to dismiss the ERISA claim is granted. If Washington cannot fix the claim in an amended complaint, then the Court will relinquish jurisdiction over the state law claim.

**I. Background**

For the purposes of this motion, the Court accepts as true the allegations in the Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Washington began working for CPS in 1992, and in her time there served as a teacher, assistant principal, and contract principal. Compl. ¶ 5. In February 2014, she signed a contract to serve as the Principal for Gale Elementary School from July 1, 2014 through June 30, 2018. *Id*. ¶ 7. The contract contained a process for termination, including a "full due process hearing." *Id*. ¶ 9. Washington alleges that she performed her jobs duties adequately and that Gale Elementary improved during her tenure. *Id*. ¶¶ 12-14.

But Washington alleges that the Board had "an unwritten policy whereby it systematically targeted experienced African-American female contract principals who were more than forty years of age for unjustified removal … so that it could replace them with politically connected, younger and cheaper candidates." Compl. ¶ 15. Washington believes she was targeted by this policy and gives a few reasons why. First, she says her supervisor told her that "he was under a lot of pressure from CPS leadership to remove [her]." *Id*. ¶ 17. Second, in May 2016 he imposed on her a "Corrective Action Plan," which her allegations suggest was unwarranted, infeasible, and procedurally improper. *Id*. ¶¶ 18-20. Then, after Washington spoke publicly at a

rally for public school funding in May 2016, *id.* ¶¶ 21-22, the Board "threatened to dismiss" her for "exhibit[ing] conduct unbecoming of a principal." *Id.* ¶ 24.

Here is where Hughes Socol comes in. Washington retained the law firm in July 2016 "to represent her in connection with her employment with CPS." Compl. ¶ 26. In August 2016, the Board again threatened to terminate Washington's contract and drafted a settlement agreement for her to sign. *Id.* ¶¶ 27-28. That month, Washington was removed from her post as principal. *Id.* ¶ 29. Washington maintains that the Board terminated her contract in retaliation for her public speaking and to avoid "pay[ing] her full employment benefits, including retirement benefits." *Id.* ¶¶ 29-31. The complaint does not specify whether Washington still works at CPS, but it does make clear that because her contract at Gale was terminated, Washington was denied a salary increase in November 2016. *Id.* ¶ 34. Because Washington's retirement benefits are tied to her salary, losing the increase affected her retirement benefits. *Id.*

With regard to her ERISA claim, Washington alleges that Hughes Socol did a few things wrong in termination process. First, attorneys at Hughes Socol "encourage[d] her not to appear at a hearing on October 14, 2016 to oppose" the termination of her contract at Gale Elementary. Compl. ¶ 47. Second, Hughes Socol attorneys did not attend the hearing themselves. *Id.* And finally, Hughes Socol did not "assert[] any defense on behalf of Washington against the Board's unlawful employment practices." *Id.* Washington's legal-malpractice claim also alleges that Hughes Socol failed to explain Washington's rights to her, that they neglected to

3

investigate several aspects of her termination, and that they wrongly advised her to sign the settlement agreement. *Id.* ¶¶ 52-53.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) cleaned up).[2] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the

---

[2]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

4

assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

### A. ERISA Claim

Hughes Socol argues that Washington fails to adequately allege that the law firm violated ERISA. The firm's initial argument is that it could not be liable to Washington under ERISA because it was not her employer. Mot. Dismiss at 2 (citing *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 913 (7th Cir. 2013)). That argument does not work. Hughes Socol's motion originally assumed that Washington had brought an action for benefits under 29 U.S.C. § 1132, or ERISA § 502. But Washington's claim was for discrimination, which is actionable under § 510. *See* 29 U.S.C. § 1140. ERISA § 510 makes it unlawful to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising" particular rights. 29 U.S.C. § 1140. And the Seventh Circuit has resisted holding that only employers can be liable for violations of § 510. *See Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 826-27 (7th Cir. 2014) ("We are not saying that only employers can be liable for violating § 510—although some of our opinions can be read to suggest as much. As we have recently explained, this language was dicta, and any assumption that only employers can be liable under § 510 was ill founded.") (cleaned up); *see also Feinberg v. RM Acquisition, LLC*, 629 F.3d 671, 675-76 (7th Cir. 2011) (explaining that an adverse action under § 510 need not even involve a direct interference with an employment relationship).

So the question is whether Washington has pled a plausible claim for relief under ERISA § 510. The pertinent § 510 term at issue in this case is "discriminate." And, as the Seventh Circuit cases cited above explain, that term encompasses more than the typical punishment that an employer might impose against an employee. Having said that, as Hughes Socol argues in its reply, R. 17 at 1-2, there is still some limit to what can plausibly be covered under § 510 as discrimination. In both *Teamsters* and *Feinberg*, the Seventh Circuit ultimately held that the employees had failed to allege discrimination under § 510. In *Feinberg*, the employer had opted not to assume pension liability for the plaintiffs when it acquired their former employer. 629 F.3d at 673. The Seventh Circuit reasoned that the employer could not be held responsible under § 510 for failing to do something it never had any legal obligation to do in the first place and concluded that the employer's choice not to assume the pension liability failed to qualify as discrimination. *Id*. at 675-76 ("A buyer of assets has, with exceptions inapplicable to this case, no obligation to assume the seller's liabilities"). In *Teamsters*, the Seventh Circuit refused to hold the defendant-employer responsible under § 510 when its contractor discharged the plaintiffs, who were employees of the contractor—not of the defendant-employer. 741 F.3d at 821, 826-27. Because the defendant was not the plaintiffs' employer and did not discharge the employees itself, it could not possibly be liable for the discharge. *Id*. at 821 ("Although liability under [§ 510] is not limited to employers, the plaintiffs allege only an unlawful 'discharge,' which presumes an employment relationship. [The defendant was not the plaintiffs' employer], so the district court properly dismissed

the § 510 claim."). *Teamsters* and *Feinberg* illustrate that there are limits on what can qualify as discrimination under § 510: at the very least, the defendant must have caused the injury to the employee's ERISA benefits.

Here, even if a law firm that has helped an employer force out the firm's client to prevent the exercise of ERISA-protected rights could theoretically be liable under § 510, Washington has not stated a plausible claim against Hughes Socol. A *prima facie* case of § 510 discrimination would eventually require Washington to prove either specific intent by Hughes Socol to discriminate, or—under the indirect method—"circumstances that provide some basis for believing that the prohibited intent to retaliate or to prevent the use of benefits was present." *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005) (cleaned up) (setting out the requirements for a prima facie case under ERISA § 510). Of course, successfully *pleading* a claim for employment discrimination does not require establishing a *prima facie* case. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 405-06 (7th Cir. 2010) ("Swanson's complaint identifies the type of discrimination that she thinks occurs …, by whom …, and when …. This all that she needed to put in the complaint.") (citing *Swierkiewiez*, 534 U.S. at 511-12 (2002)). But the complaint still must be "plausible." *Iqbal*, 556 U.S. at 678. The claim to relief set out in this complaint is not plausible, because there are no facts alleged that suggest Hughes Socol had any relationship with the Board or any other reason to help the Board achieve its allegedly discriminatory or retaliatory goals. To infer on these facts that Hughes Socol might have had an intent to discriminate defies "judicial experience and common sense." *Id.* at 679.

7

Put another way, this case is distinguishable from *Swierkewicz*—and most employment cases—on one pivotal point: the Defendant here is not Washington's former employer. Because it had no part in the employment relationship, there is no basis for an inference—at least on the facts alleged in the complaint—that Hughes Socol would have helped the Board remove Washington as principal. Without factual allegations about Hughes Socol's motive or relationship to the Board, the theory of § 510 liability set out in the complaint just does not add up. So while it might be theoretically possible for a law firm like Hughes Socol to face liability under § 510, in this case more facts would be required to make that theory plausible.

There is one paragraph in the complaint that addresses the connection between the Board and Hughes Socol, and Hughes Socol's intent to discriminate against Washington: "Defendant violated Washington's rights under ERISA by knowingly participating in the Board's discriminatory plan to deprive Washington of the full retirement benefits that she would have received if she had worked for the Board until she retired after 35 years of service." Compl. ¶ 47. But the allegations about Hughes Socol's knowledge and intent here are more legal *conclusion* than fact. *See Iqbal*, 556 U.S. at 678-79. There are no facts or circumstances alleged that support an inference that Hughes Socol was aware of the Board's allegedly discriminatory plan, much less that it was involved in it, so Count 1 must be dismissed.

### B. Legal Malpractice Claim

With Count 1 dismissed, the remaining claim is the state law legal malpractice claim, and the usual presumption kicks in: "when the federal claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (per curiam) (citing cases). This presumption is expressed in 28 U.S.C. § 1367(c)(3), which provides for the discretionary relinquishment of jurisdiction over state claims when the claims providing original jurisdiction have been dismissed. Here, Count 1 created federal-question jurisdiction, and Washington has not asserted diversity jurisdiction (nor does it appear that she could, because both sides likely are Illinois citizens). Given that there is no basis for jurisdiction without Count 1, there is no good reason to hang onto the state claim: there will be no statute of limitations bar because of Illinois's savings statute, 735 ILCS 5/13-217, the Court has not spent significant judicial resources on the legal-malpractice claim, and it is not clear how it should be decided. *See Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007). Because the federal claims have been dismissed, this Court will also relinquish supplemental jurisdiction over the state law claim, if Washington is unable to successfully file an amended complaint.

### IV. Conclusion

For the reasons stated above, the ERISA claims in the complaint are dismissed. Washington's sur-reply, R. 18, suggests that she may have additional facts to allege to support her ERISA claim. Although the Court does not comment on whether those

9

facts would be enough to successfully allege a § 510 claim, the complaint is dismissed without prejudice to Washington filing an amended complaint by April 22, 2019. If no amended complaint is filed by that deadline, then the dismissal will convert to a dismissal with prejudice. If and when the ERISA claim is dismissed with prejudice, then the Court will relinquish jurisdiction over the state law claims.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 29, 2019